UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 MAY 31 PM 4:40

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **CHRISTOPHER TODD CRAMER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: |
| | ) | CV 98-B-2097-S |
| **STREETBALL PARTNERS, INC.** and | ) | |
| **HOOP-IT-UP DOMESTIC, LP,** | ) | |
| | ) | |
| **Defendants.** | ) | |

ENTERED

MAY 3 1 2001

### MEMORANDUM OPINION

Currently before the court is defendants' Motion for Final Summary Judgment filed by Streetball Partners, Inc. and Hoop-It-Up Domestic, LP[1] ("defendants"). Plaintiff Christopher Todd Cramer ("plaintiff" or Cramer") filed this action against Streetball Partner's, Inc. and fictitious defendants, alleging claims for negligence and wantonness. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motion is due to be granted.

### I. STATEMENT OF FACTS

On or about August 18, 1996, plaintiff was participating in a Hoop-It-Up basketball tournament in Birmingham, Alabama, which lasted from Saturday, August 17, 1996, to Sunday, August 18, 1996. (*See* Pl.'s Compl.; DX B at 68.)[2] The tournament participants were asked to

---

[1] Plaintiff added Hoop-It-Up Domestic, L.P. as a defendant on November 24, 1999.

[2] Defendants filed their Motion for Summary Judgment with attached exhibits. This evidence will be referred to as "DX," followed by the corresponding tab letter. Defendants also submitted evidence along with Defendants' Reply to Plaintiff's Opposition to Motion for Final Summary Judgment ("Defs.' Reply"). This evidence will be referred to as "DX II," followed by the corresponding tab letter. Plaintiff attached evidence to his Memorandum Brief and



sign a release agreement prior to each basketball game in the tournament. (Cramer Dep. at 73.) Plaintiff was injured on Sunday, August 18, 1996. (*See* Pl.'s Compl. at ¶ 4; Cramer Dep. at 137-39.)

Prior to playing on August 17, 1996, the first day of the Hoop-It-Up tournament, plaintiff signed a "Waiver of Claim" form purporting to release any claims for personal injury against defendants. (*See* DX A; DX B at 73-77, 112-13, 117-19.) Plaintiff also testified that he signed several other identical Waiver of Claim forms, (DX B at 112; Cramer Dep. at Exs. 10-14 attached thereto), but now asserts that he did not sign a release form before the game in which he was injured, (*see* Pl.'s Br. at unnumbered 2, 5-6). Plaintiff acknowledged that he had the opportunity to read the release agreement, entitled "Waiver of Claim," but stated that he did not, in fact, read the agreement. (*See* DX B at 75-77.) Further, plaintiff testified that he did not make any complaint to or ask any questions of anyone at the Hoop-It-Up event with respect to the Waiver of Claim form. (*See id.* at 122-23.)

On Sunday, August 18, 1996, following a forfeit in a morning game, plaintiff's basketball team participated in a 1:00 p.m. game. (Cramer Dep. at 137-39.) Midway through the game, as plaintiff maneuvered toward the basketball goal, he jumped in the air and his right foot landed on a portion of the basketball goal assembly, which consisted of a black plywood board. (*See* Cramer Dep. at 146-57.) When plaintiff's foot hit the board, it caused his ankle to twist, thereby injuring plaintiff. (*Id.* at 158-60.)

---

Evidentiary Submission in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Br."), consisting of the Deposition of Christopher Todd Cramer, which will be referred to as "Cramer Dep." and the deposition of Drue Carney, which will be referred to as "Carney Dep."

As a result of the accident, plaintiff suffered a dislocated right ankle, torn ligaments, and a number of fractures. (*Id.* at 181.) Plaintiff was hospitalized and required medical treatment to repair his ankle. (*See* Compl. at ¶ 7; *see also* Cramer dep. at 180-81, 185.) Plaintiff recovered from his surgery, but he continues to have occasional pain and a decreased range of motion in his ankle. (*See* Cramer Dep. at 185.) Following the Hoop-It-Up event in Birmingham in 1996, plaintiff participated in a Hoop-It-Up tournament in Birmingham in 1998 and a Hoop-It-Up tournament in Atlanta, Georgia in 1999, and again signed the Waiver of Claim forms. (*See id.* at 52-54, 214-18.)

Plaintiff asserts claims against defendants for negligence and wantonness. (*See* Compl.) Specifically, plaintiff alleges that the design of the subject basketball goal is defective in that the base assembly of the basketball goal, which incorporates the black plywood board, is too close to the basketball rim, causing an unsafe playing condition. (*See* Compl. at ¶ 6; *see also* Pl.'s Br. at unnumbered 3.) Defendants contend that "[b]ecause plaintiff signed an exculpatory clause, his claims for negligence are barred." (Defendant's Motion for Final Summary Judgment ("Def.'s Mot.") at ¶ 3.) Defendants further argue that plaintiff's claim of wantonness fails because "there is absolutely no evidence whatsoever of wanton behavior on behalf of the Defendants." (*Id.* at ¶ 4.)[3]

---

[3] Defendants also raise several other grounds in their Motion for Summary Judgment which are unnecessary for the disposition of this case on summary judgment. Defendants, in addition to asserting the release agreement, assert that any hazard claimed by plaintiff was "open and obvious" and therefore any claims with respect to the hazard would be barred; that plaintiff's claims are barred by the affirmative defense of assumption of the risk; and that plaintiff has not submitted appropriate opinion testimony with respect to design hazards. For purposes of this opinion and order, the court will not address these additional issues and renders no opinion as to the merit of these arguments.

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. DISCUSSION

### A. The Release

Defendants assert that the release agreement at issue effectively bars any claims for negligence asserted by plaintiff. (Defendants' Memorandum Brief in Support of Motion for

Final Summary Judgment ("Defs.' Br.") at 6-10; Defs.' Reply at 1-3.) Plaintiff argues that, because there is no evidence that he signed a release agreement for the game in which he was injured, he is not now bound to the terms of the release for injuries sustained in that game. (Pl.'s Br. at 5-6.) The court agrees with defendant's contentions.

    a.   *Scope of the Release*

A release is a contract and is controlled by contract law. *Gess v. United States*, 909 F. Supp. 1426, 1446-47 (M.D. Ala. 1995) (applying Alabama law).[4] "It is well established in Alabama that when an instrument is unambiguous its construction and legal effect will be based upon what is found within its four corners." *Newburn v. Dobbs Mobile Bay, Inc.*, 657 So. 2d 849, 853 (Ala. 1995) (citing *Austin v. Cox*, 523 So. 2d 376, 379 (Ala. 1988)); *accord American Nat. Fire Ins. Co. v. Hughs*, 624 So. 2d 1362, 1365 (Ala. 1993) (quoting Ala. Code §12-21-109 (1975) ("All . . . releases and discharges in writing . . . must [be given] effect according to their terms and the intentions of the parties thereto.")). If a document is unambiguous, its construction and legal effect are questions of law that may be decided on summary judgment. *Id.* (citing *Jehle-Slauson Construction Co. v. Hood-Rich Architects and Consulting Engineers*, 435 So. 2d 716 (Ala. 1983)). The threshold question of whether the release at issue is unambiguous is a question of law to be decided by the court. *Baker v. Blue Circle, Inc.*, 585 So. 2d 868, 870 (Ala. 1991). In determining whether a release is ambiguous, the court must give the words their plain and ordinary meaning. *Id.* (citations omitted).

---

    [4] A federal court sitting in diversity must apply the substantive law of the forum state. 28 U.S.C. §1652. Thus, the court will apply the law of the State of Alabama.

The Waiver of Claim form at issue states, in pertinent part:

**In consideration of being allowed to participate in the Hoop-It-Up® three-on-three basketball event and related events and activities,** the undersigned:

Agree that prior to participating, they each will inspect the facilities and equipment to be used, and if they believe anything is unsafe, they will immediately advise a tournament official of such condition(s) and refuse to participate until such condition(s) is corrected.

. . .

Acknowledge and fully understand that each participant will be engaging in activities that involve risk of serious injury, including permanent disability and death, and severe social and economic losses which might result not only from their own actions, inactions, or negligence, but also the actions, inactions, or negligence of others, the rules of play, or the condition of the premises or of any equipment used. Further, there may be other risks not known to us or not reasonably foreseeable at this time.

Assume all the foregoing risks and accept personal responsibility for the damages following any injury, permanent disability, or death.

Release, waive, and discharge any and all claims of damages for death, personal injury, or property damage which I may have or which may hereafter accrue to me, as a result of my participation or otherwise, and which may be asserted by me or on my behalf against Streetball Sports Ventures Partners, L.P., Hoop-It-Up Domestic, L.P., U.S.A. 1, Inc., NBC, National Basketball Association Properties, Inc., their affiliated clubs, their respective administrators, agents, coaches, officers, directors, and other employees of the organization, other participants, sponsoring agencies, sponsors, advertisers, and, if applicable, owners and lessees of premises used to conduct the event.

By execution below, the undersigned here acknowledged that (i) each of them has read the above and understand that they have given up substantial rights by signing this document, and (ii) they are executing this document voluntarily.

(DX A.) The court sees no ambiguity in the release executed by plaintiff and defendant. Thus, parol evidence is inadmissible to impeach the terms of the release, and the release will be given effect according to the intention of the parties, as adjudged by the court from what appears on the face of the document. *See Johnson v. Asphalt Hot Mix*, 565 So. 2d 219, 221 (Ala. 1990);

*Carnival Cruise Lines, Inc. v. Goodin*, 535 So. 2d 98, 101 (Ala. 1988).

The plain meaning of the release agreement releases any claims brought as a result of participating in the Hoop-It-Up event. There is no limiting language in the release which would in any way indicate that the release form relates to any specific basketball game occurring during the tournament or event. To the contrary, the release encompasses the "three-on-three basketball event and related events and activities." (*See* DX A.) Thus, the plain language of the agreement clearly indicates that the release relates to the Hoop-It-Up tournament as a whole, including each game occurring therein. Therefore, the signing of one Waiver of Claim form would be effective to release all negligence claims for injuries occurring during any game taking place during the course of the tournament.[5] Based upon the clear language of the release agreement, plaintiff's argument that the absence of a release agreement signed immediately prior to the subject game invalidates the release agreement is without merit.

Plaintiff further claims that he did not read the Waiver of Claim form pertaining to the Hoop-It-Up tournament in 1996, though he affirmatively testified that he had the opportunity to do so. (DX B at 73-77.) Under Alabama law, an adult with the ability to read is on notice of and bound by terms in an agreement he or she signs, even though that adult claims not to have read the document. *See, e.g., Safeway Ins. Co. of Alabama, Inc. v. Taylor*, 758 So. 2d 523, 525 (Ala.

---

[5] Plaintiff testified that he did, in fact, sign multiple Waiver of Claim forms during the 1996 tournament at which he was injured. (*See* DX B at 112-13, 117-19.) Although plaintiff now asserts that he did not sign a Waiver of Claim form before the game in which he was hurt, (*see* Pl.'s Br. at unnumbered 2, 5-6), he testified that he signed several Waiver of Claim forms that were not dated, (*see* DX II B; DX II C and Exs. attached thereto), and he admitted that he signed five different Waiver of Claim forms during this tournament, one of which is dated August 17, 1996, the first date of the tournament, (*see* DX II B at 74; DX II C and Exs. attached thereto).

1999) ("a person who signs a contract document is on notice of the terms therein and is bound thereby, even if he or she fails to read the document"); *Power Equipment Co. v. First Alabama Bank*, 585 So. 2d 1291, 1296 (Ala. 1991) ("The law is clear that in the absence of fraud or misrepresentation a party is bound by the terms of a contract, even if he fails to read it.'"). Further, the Eleventh Circuit Court of Appeals has held that a plaintiff's assertion that he did not understand the pre-activity release at issue was "insufficient to avoid the binding effect of those written documents." *Rommell v. Automobile Racing Club of America, Inc.*, 964 F.2d 1090, 1096 (11th Cir. 1992). Thus, the fact that plaintiff may not have read this agreement is insufficient, as a matter of law, to defeat the binding effect of the agreement he signed.

As noted above, contestants in the Hoop-It-Up basketball tournament are asked to sign a release agreement before each game. Plaintiff, who attended high school through the Eleventh grade, (*see* Cramer Dep. at 31-32), testified in his deposition that he can read, (DX B at 30). Plaintiff testified that he signed multiple Waiver of Claim forms prior to the game in which he was injured. (*Id.* at 112-13, 117-19.) While there is no direct evidence that plaintiff signed a release agreement for the game in which he was injured, the evidence shows that plaintiff signed several release agreements. (DX II B; DX II C and Exs. attached thereto.) As discussed above, it is only necessary to establish that plaintiff signed one release agreement, since the clear language of the release agreement relates to the tournament as a whole and does not limit the scope of the agreement to specific games occurring during the tournament. Therefore, the court concludes that the Waiver of Claim forms signed by plaintiff covered any and all claims, including those currently before the court.

b.   *Validity of the Release*

Pre-contest or pre-race exculpatory clauses are valid and consistent with public policy in Alabama with respect to negligence claims. *See, e.g., Rommell*, 964 F.2d at 1096-1098; *Gore v. Tri County Raceway, Inc.*, 407 F. Supp. 489, 491-92 (M.D. Ala. 1974); *Reece v. Finch*, 562 So. 2d 195, 198-200 (Ala. 1990); *Barnes v. Birmingham Intern. Raceway, Inc.*, 551 So. 2d 929, 933 (Ala. 1989); *Young v. City of Gadsden*, 482 So. 2d 1158, 1159-1161, (Ala. 1985) (overruled in part); *Dudley v. Bass Anglers Sportsman Society*, 777 So. 2d 135, 138 (Ala. Civ. App. 2000). Alabama courts have repeatedly held that an exculpatory agreement signed by a plaintiff prior to a race or contest will bar any claim for negligence.[6] *See id.* Moreover, Alabama courts have extended these pre-conduct releases beyond the race context. The Alabama Supreme Court also applied this rule in the context of an action brought by a physician against his fellow physicians, arising out of the fellow physicians' statements to an insurance company. *See Reece*, 562 So. 2d at 196-97, 200. Additionally, the Alabama Court of Civil Appeals recently applied this analysis to a pre-tournament release agreement signed by participants in a bass fishing tournament and held that the release effectively barred any claims for negligence. *Dudley*, 777 So. 2d at 136, 138. Finally, the Middle District of Alabama applied this rule to a "pre-fishing tournament release," in which the court held that such a release was valid and enforceable as to the tournament participants' claims for negligence. *Chad Prough and Michael Ard v. The Albany*

---

[6] However, Alabama courts do not allow such agreements to bar claims for wantonness. *See Barnes*, 551 So. 2d at 933 ("pre-race releases, although valid and consistent with public policy as to negligent conduct, are invalid and contrary to public policy as to wanton or willful conduct"). In *Barnes*, the Alabama Supreme Court departed from the doctrine of *stare decisis* and overruled only the portion of *Young v. City of Gadsden* holding that such releases may exculpate one from liability for wanton conduct. *See id.*

9

*Harold Publishing Co.*, CV96-D-1242-N, (M.D. Ala. 1997). The court concludes that the release agreement for the basketball tournament is valid and enforceable as to plaintiff's negligence claims. Therefore, by signing the Waiver of Claims forms, plaintiff released defendants from liability for any claims of negligence.

**B.     Wantonness Claim**

"Under Alabama law, wanton conduct 'is the conscious doing of some act or the omission of some duty [by one who has] knowledge of the existing conditions, and [who is] conscious that from the doing of such act or omission of such duty injury will likely or probably result.'" *Rommell*, 964 F.2d at 1096 (quoting *Copeland v. Pipe Liberal Arts School*, 553 So. 2d 100 (Ala. 1989)). A finding of wanton conduct "must be based upon facts beyond mere negligence." *Id.* The *Rommell* court further explained:

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury.

*Id.* at 1097 (quoting *Yamaha Motor Co., Ltd. v. Thornton*, 579 So. 2d 619, 623 (Ala. 1991) and *Central Alabama Electric Co. Operative v. Tapley*, 546 So. 2d 371 (Ala. 1989)).

Having reviewed all the evidence submitted in the case, including the deposition testimony of plaintiff, the court is of the opinion that plaintiff has failed to provide evidence sufficient to support a claim for wantonness. Thus, plaintiff's claim of wanton conduct fails, and defendants are entitled to judgment as a matter of law as to this claim.

### III. CONCLUSION

For the foregoing reasons, the court is of the opinion that Defendant's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE**, this 31st day of May, 2001.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge